Trevor TALLANT, Appellant,

v.

The STATE of Texas, Appellee.

No. 555–84.

Court of Criminal Appeals of Texas, En Banc.

June 24, 1987.

---

Richard Jaramillo, Tom Mills, Dallas, for appellant.

Henry Wade, Dist. Atty. & Anne B. Wetherholt, R.K. Weaver, Andy Anderson & Reed Prospere, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON STATE'S

PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Convicting appellant of aggravated rape of a child, V.T.C.A. Penal · Code, § 21.03(a)(5) (repealed), the jury assessed punishment at life imprisonment and a fine of $10,000.

In an unpublished opinion the Dallas Court of Appeals found that admission of State's Exhibit No. 1, a collection of 1036 photographs of the twelve year old victim taken by appellant, was reversible error: error because seized pursuant to defective search warrant, and reversible because more than 200 depicted the victim engaging in all sorts of deviate sexual conduct, in 400 she is nude and "sexually suggestive" and in over 380 she is "just nude." Writing for the court Justice Vance declares that he had never seen "more veneral [sic], salacious or scurrilous evidence presented in a sex-related crime," and that the court could not say "the jury's viewing of the photographs did not contribute to the punishment assessed. . . ." *Tallant v. State* (Tex. App.—Dallas No. 05–82–00794–CR, delivered March 23, 1984).

The Court granted review to examine the principal contention by the State in its petition for discretionary review (PDR), that the question of validity of the search warrant has not been preserved for appellate review. Finding, however, that the contention is being advanced for the first time in this Court, we thus reject it, and will affirm the judgment of the Dallas Court of Appeals.

The Court often confronts a troublesome situation, *viz:* After submission on briefs and oral arguments of the parties, the court of appeals delivers an opinion adverse to the State; while not raising it initially, the State may, but more likely will not, file a motion for rehearing advancing a procedural default as a reason why the court of appeals should not have decided the point of error in the first place; if filed, the motion is overruled; the State then complains in its PDR that the court of appeals was wrong in addressing the point of error. We frankly acknowledge our past treatment of such PDRs has not been all that consistent.

This cause presents a variation on that theme: Appellant urged in two of eleven grounds of error that the trial court erred in admitting State's Exhibit No. 1, in that the photographs were seized under purported authority of an invalid search warrant; the State responded that admitting them was harmless error because cumulative with other testimony. However, according the court of appeals, *"The State conceded at submission that the search warrant was invalid;* therefore, the photographs were not admissible at trial." * The court said the pivotal issue is "whether the improper admission of the photographs which were seized under the invalid warrant requires a reversal." Disagreeing with the State's argument that admission

---

* Moreover, in its brief on original submission to the court of appeals the State's Counterpoint No. 2 is: "The *Appellant was not Harmed by the Admission of Photographs* Contained in State's Exhibit No. 1.," and thereunder it states:

"The search warrant at issue. . . . was an evidentiary search warrant which was signed by a magistrate rather than the judge of a statutory court as required by Tex.Code Crim.Proc. Ann. art. 18.02 (1965). *While the Appellant's premise may be correct,* his conclusion is faulty as no reversal is required under the unique facts and circumstances of this cause. The introduction of the exhibit was *harmless beyond a reasonable doubt* as the State's exhibit was merely *cumulative* of the earlier testimony by the complainant."

The balance of its argument develops that thesis. Never once does the State assert that error had not been preserved. (All emphasis is mine throughout unless otherwise indicated.)

was harmless beyond reasonable doubt in that it was merely cumulative of earlier testimony of complainant, the court could not say "that the severity of punishment assessed by the jury was not attributable, at least in part, to its viewing of these inadmissible photographs," and, therefore, was "compelled to reverse."

■ The State did not claim below and the opinion on original submission never mentions there might be a problem with preservation of error. In its PDR the State informs us that it filed a motion for leave to file what it concedes is an *untimely* motion for rehearing, and that the court of appeals had not acted on either, so it was filing its PDR "in order to be *certain of further appellate review*." PDR, at 6. Thus its PDR was premature, there being no final ruling of the court of appeals. See former rules 209 and 304(b).

In its motion for leave the State made known that it wished to present three new reasons—*"reasons which were not previously raised"*—for affirming judgment of conviction. Those reasons are not specified. There is no motion for rehearing in this record, nor does the clerk of the court of appeals identify one in his transmittal of the record to this Court. Apparently treating the motion for leave as a motion for rehearing, the court of appeals overruled the motion some thirty days thereafter with a simple order of record.

Yet, the State's first ground for review is that the court of appeals "erred in deciding a ground of error which was not preserved for appellate review." *Ibid.* Under "Reason for Review," it asserts that the court of appeals *"has decided"* an important question of law in conflict with decisions of this Court "by *not considering* the grounds raised [but not stated in its untimely] Motion for Rehearing."

Not too long ago this Court admonished an appellant that rules pertaining to discretionary review must be followed, *viz:*

"The Rules of Post Trial and Appellate Procedure governing petitions for discretionary review in this Court do not authorize review of claims which have not been presented in an orderly fashion and determined by the appropriate court of appeals."

*Lambrecht v. State,* 681 S.W.2d 614, 616 (Tex.Cr.App.1984). More recently in *Arline v. State,* 721 S.W.2d 348 (Tex.Cr.App. 1986), an appellant sought review of two points of error not decided by the court of appeals; the bench and bar were reminded that discretionary review has its limitations, *viz:*

"However, our review is limited to those points of error decided by the courts of appeals, included in petitions for review and granted as grounds for review."

*Id.,* at 353, n. 9. See also *Humason v. State,* 728 S.W.2d 363, 365 n. 4 (Tex.Cr. App. 1987).

■ There was and is a provision for suspending rules of appellate procedure. See former rule 4 and Tex.R.App.Pro. Rule 2(b). There is none for ignoring, disregarding or violating them on the part of any party or appellate court, especially this one. Transgressions of rules of appellate procedure which this Court has insisted be followed cannot be summarily dismissed. *Lambrecht, Arline* and *Humason,* all supra; see also *Gambill v. State,* 692 S.W.2d 106 (Tex.Cr.App.1985). Just as an appellant must properly present points of error to the court of appeals for its decision in order to complain of an adverse determination by way of ground for review, we hold that the State must call to the attention of the court of appeals in orderly and timely fashion that an alleged error was not preserved.

■ The State may not concede the error, as it did below, and then for the first time submit here that very complaint withheld from the court of appeals, secure in the thought that this Court will determine the court of appeals erred in deciding consequences of the error the State confessed to it in open court. Similarly, an appellant may not expect this Court to consider a ground for review that does not implicate a determination by the court of appeals of a point of error presented to that court in orderly and timely fashion. See *Degrate v. State,* 712 S.W.2d 755 (Tex.Cr.App.1986).

While a motion for rehearing in the court of appeals is not a prerequisite for our granting discretionary review, Tex.R.App. Pro. Rule 200(d), there will be instances where it is a helpful tool for focusing attention on an adverse determination of an issue, see *id.*, Rule 100(a), and if it draws a responsive opinion from the court so much the better, Rule 100(c).

The judgment of the Dallas Court of Appeals is affirmed.

TEAGUE, Judge, concurring.

After having carefully read the opinion of the Dallas Court of Appeals and the authorities cited therein, the State's petition for discretionary review, and the authorities cited therein, and having concluded that the opinion of the court of appeals correctly decided the issue, my vote is to refuse the State's petition for discretionary review as having been improvidently granted. Nevertheless, I join the judgment of this Court.

Neither the State Prosecuting Attorney and his staff nor the local District Attorney and his staff disputes the fact that the State *conceded* at submission before the court of appeals that the search warrant that issued in this cause was invalid; thus, it was not necessary for the court of appeals to address the issue whether the search warrant was valid; the only issue then before that court was whether the improper admission of the photographs which were seized pursuant to the invalid search warrant was harmless error. I find that the court of appeals correctly concluded that the error was not harmless beyond a reasonable doubt as to the punishment that appellant was assessed; thus, there is no need for this Court to review the decision of the court of appeals. Also see, *Tallant v. State*, 658 S.W.2d 828 (Tex.App. 2d Dist. 1983) (dis. rev. refused).

There is a paucity of cases discussing the subject of "confession of error." See 8A

*Words and Phrases* 67. This is probably because it is the rare instance when the party to the lawsuit who won in the trial court will on appeal confess error. However, it does happen from time to time, and I find that it happened in this cause.

In *Ramiriz v. State*, 155 Tex.Cr.R. 206, 233 S.W.2d 307 (1950), when this Court was a de novo reviewing court in both death penalty and non-death penalty cases appealed to this Court, based upon what Hon. George B. Blackburn, the then State's Attorney, had stated in his brief, this Court concluded: "This is tantamount to confession of error on the part of the State, which we find to be well founded." (307). This Court then reversed the defendant's conviction. The opinion of this Court, however, does not actually reflect that it made an independent review of the defendant's ground of error before concluding that the conviction should be reversed.[1]

What effect must a de novo reviewing court give a "confession of error" by a prosecutor? Because I find no decision by this Court holding to the contrary, I believe that such a court is entitled to hold that such "confession of error" warrants, but does not require, that the contention to which the "confession of error" relates should be sustained, without the necessity of making an independent review of the contention.[2]

In this instance, the court of appeals apparently chose to take the prosecutor at his word[3] at oral argument that the search warrant was invalid and not write on the issue of the validity of the search warrant. Whether it independently reviewed the validity of the search warrant, after the case was submitted, as it could have done, and thereafter concluded that the prosecutor's "confession of error" was in all things correct, is not reflected in the opinion. In any event, I find nothing in our law or our rules that would permit this Court to review the

---

**1.** Also see *Hawkins v. State*, 613 S.W.2d 720 (Tex.Cr.App.1981) and the cases cited on page 723; *Gaines v. State*, 556 S.W.2d 332 (Tex.Cr. App.1977); *Keagan v. State*, 618 S.W.2d 54, 58 (Tex.Cr.App.1981); *Bouie v. State*, 528 S.W.2d 587, 588 (Tex.Cr.App.1975).

**2.** E.g. *Arnott v. State*, 498 S.W.2d 166, 179 (Tex. Cr.App.1973) (Douglas, J., dissenting opinion).

**3.** Ms. Anne B. Wetherholt, who presently represents the State, is not this attorney.

State's decision to "confess error" in the court of appeals, which is what I find the State's representative before this Court is implicitly now asking us to do.

The following statement in the majority opinion provoked me to write: "While a motion for rehearing in the court of appeals is not a prerequisite for our granting discretionary review, Tex.R.App.Pro.Rule 200(d), there will be instances where it is a helpful tool for focusing attention on an adverse determination of an issue, see id., Rule 100(a), and if it draws a response opinion from the court so much the better, Rule 100(c)." (Page 5 of slip opinion.) This is an incomplete, but true statement; its incompleteness lies in not recommending that Rule 100 be rewritten.

The author of the majority opinion remarks that the State often does not file a motion for rehearing in the court of appeals even when it is dissatisfied with an opinion from that Court. I find from experience that this is also true of defense counsel.

Why doesn't an attorney who is dissatisfied with the opinion of the court of appeals file a motion for rehearing in that court? I believe that it is probably because of the way Rule 100 is written. Interestingly, there has been no groundswell from either the justices on the courts of appeals or the members of the bench and bar to recommend that this Court and the Supreme Court rewrite the rule.

Nevertheless, I believe that a careful reading of the rule will convince almost anyone that it needs to be rewritten.

I find that most prosecutors and defense attorneys who appeal cases have interpreted the rule to mean that if the dissatisfied party files a motion for rehearing, it will generally be assigned to the same three judge panel that originally handed down the opinion, affirming or reversing the conviction. Of course, if a court of appeals consists of only three justices, it was actually the en banc court that decided the case. Thus, in that instance, it would probably be a waste of time to file a motion for rehearing, and the rule should be rewritten to take care of this situation. Likewise, if

a panel of a court of appeals, which consists of more than three justices, given the assumption that in deciding the issues the members of the panel gave careful consideration to the contentions, and the fact of life that the filing of a motion for rehearing is usually discouraged and is rarely granted, it is no wonder that few motions for rehearing are filed in the courts of appeals-by either party to the lawsuit.

From my perspective, what this Court usually sees in the form of a petition for discretionary review is in actuality a motion for rehearing. Thus, the rule needs to be rewritten so that the dissatisfied party in a court of appeals that consists of more than three justices may be assured that his motion for rehearing will be decided by the en banc court and not the same panel who wrote the opinion with which he is unhappy.

Therefore, I highly recommend to the other members of this Court and the members of the Supreme Court that the two Courts get together and rewrite Rule 100 to provide as I have recommended. If this occurs, I do not believe that anyone would disagree that it will make for a more efficient and better system of appellate review in this State, as it should encourage the filing of more motions for rehearing in the courts of appeals, thus giving those courts an opportunity to correct any errors of fact or law that might be in their opinions before this Court reviews those opinions. Cf. Tex.R.App.Proc., Rule 86(e).

ONION, Presiding Judge, concurring in part and dissenting in part.

The conviction here is for aggravated rape of a child under the age of 14 years which was shown to have occurred on January 22, 1982. The jury assessed punishment at life imprisonment and a fine of $10,000.00.

On appeal appellant raised eleven points of error. The Dallas Court of Appeals found the evidence sufficient to sustain the conviction, but in considering the two points that the trial court erred in overruling appellant's motion to suppress evi-

dence, the court found the trial court erred in admitting photographs seized under the authority of an invalid search warrant. The Court of Appeals found the error harmless as to the guilt stage of the trial, but as to the "punishment phase" the court could not conclude the error was harmless beyond a reasonable doubt. The cause was reversed and remanded. *Tallant v. State* (Tex.App.—Dallas 1984—No. 05–82–00794–CR) (unpublished opinion). We granted the State's petition for discretionary review to determine the correctness of the holding of the Court of Appeals.

The Court of Appeals briefly summarized the facts as follows:

"The evidence given during the guilt/innocence phase of the trial showed that the complainant was a twelve-year-old female child. About four years before the date of the alleged offense the complainant's natural mother and father had divorced. The mother and appellant had married and the complainant lived with them until immediately following the alleged offense on January 22, 1982, when the offense was reported to her natural father and law enforcement authorities. It appears that two days before January 22, 1982, the appellant, the complainant's mother and the complainant journeyed to Mexico where the defense maintained that the appellant and the complainant's mother were divorced and the appellant and the complainant were then married. The complainant testified in essence that she did not voluntarily marry the appellant but that while in Mexico she was taken up some stairs into a room where 'they' made her sign a paper and then the three returned to Dallas. After returning to Dallas on January 22, 1982, the appellant made the complainant take her clothes off and then had sexual intercourse with her. She testified that she had never been the wife of the appellant. The complainant also testified that in the year and a half before January 22, 1982, the appellant had had sexual intercourse with her about one hundred times and had taken nude photographs of her.

"During the punishment phase of the trial the appellant testified that he had indeed had sexual intercourse with the complainant on January 22, 1982, in order to consummate the marriage that he maintained took place in Mexico. He denied having intercourse with her before the alleged marriage. He admitted taking the photographs seized under the search warrant. He appears to claim that the pictures had been taken because he was in fear of the Mafia or 'mob.' He further admitted having the complainant commit oral sodomy on him and then photographing the complainant in that position on several occasions."

The record shows that prior to trial the appellant filed a motion to suppress all evidence seized as a result of a search on January 23, 1982, including the photographs in question. Appellant alleged in the motion he would "show the Court that there was no showing of probable cause in the Affidavit as required by Texas Code of Criminal Procedure Article 18.02." At the hearing on the motion to suppress the affidavit and search warrant as well as an affidavit and arrest warrant were introduced. No other evidence was offered. Appellant argued to the trial court that the statutes (Articles 18.01 and 18.02, V.A.C.C.P.) list the various reasons why a search warrant may issue, and that property in the form of "nude photographs of M——M——, a white female twelve years of age" possessed at the suspect's premises as set forth in the search warrant affidavit did not show a violation of the law. The prosecutor countered with the argument the affidavit for search warrant, read as a whole, was valid under Article 18.02(6), V.A.C.C.P., as "obscene materials," and further that the issuance of the search warrant was valid under Article 18.021, V.A.C.C.P. (Issuance of search warrant to photograph injured child). The appellant's counsel rebutted the State's argument by contending that Article 18.021 did not apply to photographs in existence and applied only to photographs to be taken to document injury to a child, and that "nude photographs" as such were not obscene and that Article 18.02(8), V.A.C.C.P., did

not apply because the photographs were not "property the possession of which is prohibited by law." No other argument was advanced. At the conclusion of argument the trial court overruled the motion to suppress.

At the guilt stage of the trial, after the complaining witness testified that appellant had intercourse with her approximately 100 times, and that he had taken nude photographs of her after makeup had been applied, Dr. Ali Toofanian related he had examined her on January 23, 1982, and found dead sperm in her vagina, and concluded sexual intercourse had probably occurred more than twelve hours before his examination. The doctor concluded from an examination that M___ M_____ had had multiple sexual intercourse.

Dallas Police Officer Grady C. Ford testified that on January 23, 1982, he executed the search warrant in question at the apartment where appellant lived with M___ M_____'s mother and found 1,036 nude photographs of M___ M_____. When the photographs (State's Exhibit No. 1) were offered into evidence, appellant objected as follows: "We would have the same objection made previously regarding the search, Your Honor." The objection was overruled and the photographs were admitted at the guilt stage of the trial.

At the penalty stage of the trial the State offered no evidence and the appellant was the only witness called by the defense. Appellant, a hairdresser, testified when he lived in Shreveport, Louisiana, he had been threatened, a shotgun pointed at him and kicked in the ribs by a man connected with the "Mafia" or "Mob" who wanted pictures of M___ M_____ dealing with sex. He related he reported the matter to the "government" in Louisiana and talked to a lawyer in Dallas when he returned there.

On cross-examination he admitted he had taken nude and obscene photographs of M___ M_____, and that he had taken a thousand more than those found and given them to the man from the "Mafia." He admitted that he had her put her mouth on his penis and photograph that, but denied sexual intercourse with M___ M_____ except on the date alleged in the indictment after the Mexican marriage; that he did that only on the advice of the "judge in Mexico" and a Dallas lawyer in order to consummate the marriage and end the custody dispute with her natural father.

Still further on cross-examination he denied that M___ M_____ cried or asked him not to take photographs of her in the nude. He related she at times enjoyed "this" and loved to show off and "didn't mind" the photographic sessions.

Appellant's second point of error upon which the reversal by the Court of Appeals was apparently based was, as earlier noted, that "the trial court erred in overruling the motion to suppress." Under such point appellant argued in his appellate brief that the search warrant could be sustained only under Article 18.02(10), V.A.C.C.P., as an evidentiary search warrant and it was not valid on this basis because it was issued by a "magistrate" and not by "a judge of a statutory county court, district court, the Court of Criminal Appeals, or the Supreme Court" as required by Article 18.01(c), V.A.C.C.P. He argued that the evidentiary search warrant was "cloaked in the disguise of a standard (paragraph 1 through 9) search warrant and does not meet the requirements of an evidentiary search warrant" issued under Subsection 10 of Article 18.02. It is observed that this argument was raised for the first time on appeal. It was not alleged in the motion to suppress and never presented to the trial court at the suppression hearing nor presented as an objection at the trial on the merits. Of course, he cannot prevail under such point of error since the complaint or objection now urged on appeal was not the same as presented to the trial court. See *Lejeune v. State*, 538 S.W.2d 775 (Tex.Cr.App.1076); *Bouchillon v. State*, 540 S.W.2d 319 (Tex.Cr.App.1976); *Simpkins v. State*, 590 S.W.2d 129 (Tex.Cr.App.1979); *Nelson v. State*, 607 S.W.2d 554, 555 (Tex.Cr.App.1980); *Vanderbilt v. State*, 629 S.W.2d 709 (Tex.Cr.App.1981); *Hodge v. State*, 631 S.W.2d 754 (Tex.Cr.App.1982); *Cravens v. State*,

687 S.W.2d 748 (Tex.Cr.App.1985).[1] Clearly the trial court did not err in overruling the motion to suppress as it was presented to the court.

However, an examination of the search warrant shows that it was issued by "Tom Boardman, Magistrate, Dallas County, Texas." No other title or designation is reflected.

Article 18.02, supra, provides:

"A search warrant may be issued to search for and seize:

"(1) * * *

"(10) property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense; or

"(11) * * *"

Article 18.01(c), provides:

"(c) A search warrant may not be issued pursuant to Subdivision (10) of Article 18.02 of this code unless the sworn affidavit required by Subsection (b) of this article sets forth sufficient facts to establish probable cause: (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched. Only a judge of a statutory county court, district court, the Court of Criminal Appeals, or the Supreme Court may issue warrants pursuant to Subdivision (10), Article 18.02 of this code."

On appeal the State in its brief did not agree that the trial court erred in overruling the motion to suppress, but did agree that the search warrant was in fact an evidentiary search warrant, see Article 18.02(10), supra, and that the warrant had been issued by a magistrate rather than by one of the judges designated by statute as authorized to issue such an evidentiary search warrant, and that the "appellant's premise may be correct." The Court of Appeals also concluded that the warrant was an evidentiary search warrant not issued by the proper authority, see Article 18.01(c), supra, and held that since the warrant was invalid and the photographs were seized under such warrant that they were erroneously admitted.

There can be no question but what the warrant was an evidentiary search warrant and because of the defect discussed its issuance was void ab initio. Since there was fundamental error, no objection at trial was necessary to preserve error for review. It was on this basis that the Court of Appeals reversed the conviction though the language of the opinion may not have made that clear. The Court of Appeals did not hold that the trial court erred in failing to grant the motion to suppress but only used the argument advanced under the point of error claiming such error as the basis for reversal. The Court of Appeals in effect found the photographs were not properly admitted because the search warrant was void ab initio.

The Court of Appeals then determined beyond a reasonable doubt that the erroneously admitted photographs did not contribute to the conviction obtained at the guilt stage of the trial in light of the testimony of the complaining witness and the doctor. However, the Court of Appeals could not conclude that the error committed at the guilt stage of the trial was harmless beyond a reasonable doubt as to punishment

---

**1.** In *Nelson v. State,* supra, this Court applied such rule noting that neither the motion to suppress nor the trial court objection invoked the laws of this state, but sought only protection by federal constitutional law. Nothing was presented for review when the invocation of state law was raised for the first time on appeal. In *Martinez v. State,* 504 S.W.2d 897 (Tex.Cr. App.1974), where the defendant did not raise at the trial the alleged invalidity of the search on the basis of inconsistency between the address of the premises as stated in the affidavit and the address as stated in the search warrant, it was held the question was not preserved for review when raised for the first time on appeal. See also *Reynolds v. State,* 506 S.W.2d 864 (Tex.Cr. App.1974).

in light of the severity of the punishment assessed.

It is true that the complaining witness at the guilt stage of the trial and the appellant at the penalty stage of the trial testified to the taking of the photographs. And the State argues that where proper evidence concerning facts is admitted at trial, the introduction of improper evidence will not cause the cause to be reversed. *Lovell v. State*, 525 S.W.2d 511, 515–516 (Tex.Cr.App.1975), and cases there cited. See also *Collins v. State*, 602 S.W.2d 537, 538–539 (Tex.Cr.App.1980). Nevertheless, after considering the testimony with the nature of the 1,036 photographs and the State's jury argument regarding such photographs, I, like the Court of Appeals, cannot say that the error was harmless beyond a reasonable doubt as to punishment. Therefore, I concur in the result reached by the majority.

I am deeply distressed, however, by the approach taken by the majority in this and other recent cases in adopting a warped policy of discretionary review that unduly and unlawfully restricts the authority of this Court of last resort in reviewing decisions by the Court of Appeals. This policy was never constitutionally intended. I heartily endorse the remarks of Judge McCormick made on this subject in his dissenting opinion.

McCORMICK, Judge, dissenting.

Today the majority of this Court disregards time-honored precepts of appellate procedure and institutes a new policy of discretionary review that both narrowly and unnecessarily restricts the authority of this Court in reviewing decisions by the intermediate appellate courts of this State. The crux of the majority opinion handed down this day may be stated simply: This Court shall not consider any point of error or *reply* thereto unless "properly" presented to and decided by the appeals courts below. My dissent today goes both to the majority's unwarranted willingness to shift or equalize the burden on direct appeal from the appellant to the State, as well as the result obtained under the majority's faulty analysis of appellate "notice."

It is axiomatic that a reviewing court should first determine whether a point of error is properly before it in a procedural context before moving on to decide the merits of the claim. If an objection made at trial is different than the argument made on appeal, nothing is preserved for review by the appellate court. *Cravens v. State*, 687 S.W.2d 748 (Tex.Cr.App.1985); *Hodge v. State*, 631 S.W.2d 754 (Tex.Cr.App.1982); *Vanderbilt v. State*, 629 S.W.2d 709 (Tex.Cr.App.1981); *Nelson v. State*, 607 S.W.2d 554 (Tex.Cr.App.1980). In other words, the burden is upon the defendant-appellant to present properly his point of error to the appeals court so that a particular point comports with the trial objection. This burden is consistent with the notion that the convicted defendant carries the burden of proof on appeal. In this same vein, the State carries no such burden, given the fact that the State has no right of direct appeal from an adverse verdict. In fact, the State may freely choose whether it wishes to file a brief in response to an appellant's brief, or to forego the same. The burden remains upon the defendant-appellant to prove that his point or points of error are properly before the court of appeals, so that the appeals court can determine whether it may reach and rule upon the merits of the particular claim.

In the case at bar, appellant failed to present properly his ground pertaining to suppression of the photographs for the very reason that he failed to preserve any such error with a proper objection in the trial of his case. Appellant's pretrial motion to suppress and his trial objections as to this evidence all were directed solely to whether sufficient evidence existed which would constitute probable cause to issue the search warrant, not to the issue appellant first argues on appeal as regards the signatory defect occasioned by a judge not listed in the statute signing the evidentiary warrant. The appeals court below, without first examining whether such error was preserved by appellant, jumped to the merits of this point of error, apparently justifying their leap in judicial authority by noting

that the State, on submission, had *acknowledged* the error. I find no such admission in reading the State's brief on this point of error, the closest statements to an admission or "confession" being made in terms of the State's "alternative" argument that, even if the warrant was invalid, or, assuming the appellant's premise of an invalid warrant was correct, error was harmless as the evidence was merely cumulative.

In discussing our rules of discretionary review, the majority cites several cases wherein we have attempted to define those matters which are properly before this Court in reviewing the decisions of an intermediate court of appeals. In *Lambrecht v. State*, 681 S.W.2d 614 (Tex.Cr.App.1984), we said:

> "The Rules of Post Trial and Appellate Procedure governing petitions for discretionary review in this Court do not authorize review of claims which have not been presented in an orderly fashion and determined by the appropriate court of appeals."

Again in *Arline v. State*, 721 S.W.2d 348 (Tex.Cr.App.1986), we opined:

> "However, our review is limited to those points of error decided by the courts of appeals, included in petitions for review and granted as grounds for review."

See also, *Humason v. State*, 728 S.W.2d 363 (Tex.Cr.App.1987).

The nub of the opinion today, as it appears to me, is that a properly presented, orderly claim must be presented to the Court of Appeals, decided by that intermediate tribunal, and presented to this Court through the petition process before we may rule on the issues presented. As applied to the defendant, given his *right* to appeal the verdict below, I have no problem with such analysis, except that the majority opinion implies policy that would severely undercut or eliminate in whole this Court's right to review unassigned error "in the interest of justice."

As to application of such a doctrine to the State, the logic of the majority position defies reason. Even though the State has no *right* to appeal, and is not *required* to respond to an appellant's points of error on direct appeal, the majority would have us from this time on judge the State's arguments in support of a presumably valid conviction with the same standard that we apply to the appellant. By its action today, the majority effectively shifts the burden to the State to *rebut* a convicted defendant's allegation on appeal or pay the price of reversal. They will also excuse intentional or unintentional oversights made by the intermediate courts of appeal in reaching its decision in a particular cause. They explicitly hamstring our own authority to review the record to determine whether an intermediary court has erred in deciding an issue. Finally, the majority sends a signal to the bar and our trial judges that one of the most basic tenets of good trial practice, that of preserving error in the record, may be disposed of by adroit packaging and argument on direct appeal, because this Court will refuse to examine whether a particular point of error was properly decided by our subordinate courts of criminal jurisdiction in the absence of the State pointing out the error for those courts. Are we not today relieving our intermediate appellate courts of their obligation to determine the appropriateness of an appellant's claims by placing the burden upon the State to rebut those claims while lacking *de jure* standing to appeal the verdict in its own right? The logic of such a position is lacking. We are not confronted today with a situation where the Court is "ignoring, disregarding or violating" the rules of appellate procedure by deciding this case on the ground that appellant failed to preserve error in the trial court below. We should simply confirm our long standing rule that unpreserved error presents no ground for review. Just as the issue of a signatory defect was not before the trial court or the Court of Appeals, nothing is presented for review by this Court where there was no objection made in the trial court on the same basis as the ground of error on appeal. *Rovinsky v. State*, 605 S.W.2d 578 (Tex.Cr.App.1980); *White v. State*, 486 S.W.2d 377 (Tex.Cr.App.1972).

I would also add that even under the majority's analysis, the issue has been wrongly decided. The majority says that

"the State did not claim below and the opinion on original submission never mentions there might be a problem with preservation of error."

\* \* \* \* \* \* .

"The State may not concede the error, as it did below, and then for the first time submit here that very complaint withheld from the court of appeals, secure in the thought that this Court will determine the court of appeals erred in deciding consequences of the error the State confessed to it in open court...."

First, as earlier stated, review of the record does not disclose that the State "conceded" error, but simply argued in the alternative. Second, the State addressed the issue, albeit modestly, under its reply to appellant's second ground of error *to the court of appeals.* I believe that the State placed the appeals court on sufficient "notice" of the defect in appellant's claim to satisfy the majority's new found policy where it was written:

"Note also that although the Appellant objected to the introduction of this (photographs) testimony, it was not on the grounds that the testimony was obtained or anyway excludable based upon the invalid search warrant." State's brief, page 9.

For the reasons above, I must dissent.

W.C. DAVIS and WHITE, JJ., join in this dissent.